IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:22-CR-25-2 |
| | ) | |
| ROSALBA PRENSA RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The defendant, Rosalba Prensa Rodriguez, is serving a 132-month sentence for one count of conspiracy to possess with intent to distribute methamphetamine. She seeks a sentence reduction under § 3582(c)(1)(A), based on 1) her medical condition, 2) her alleged status as sole caregiver to her father, 3) retroactive Amendment 821, 4) an alleged sentencing disparity, 5) the methamphetamine ratio in the Sentencing Guidelines, 6) her rehabilitation, and 7) First Step Act and Second Chance Act credits. Doc. 472. Because she has not shown an extraordinary and compelling circumstance and the § 3553(a) factors counsel against release, the motion will be denied.

## I. Procedural History

In 2022, Ms. Rodriguez pled guilty to conspiracy to possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine. Doc. 198; Minute Entry 07/11/2022. Before sentencing, the probation office prepared a presentence report (PSR) calculating her offense level as 35

and reporting no criminal history, resulting in a guidelines range of 168-210 months. Doc. 352 at pp. 17–18 ¶¶ 49–54, p. 23 ¶77.

At the sentencing hearing in February 2023, the Court adopted the PSR in full and sentenced Ms. Rodriguez to a downward variance sentence of 132 months followed by three years supervised release. Doc. 359; Minute Entry 02/21/2023.[1] Ms. Rodriguez did not appeal.

Ms. Rodriguez filed an earlier motion for compassionate release pursuant to § 3582(c)(1)(A) in October 2024, based upon her health conditions, her status as sole caregiver for her father, and other reasons. Doc. 442. The Court denied this motion in April 2025, determining that her contentions were not sufficiently supported and did not qualify as extraordinary circumstances meriting release. Doc. 462 at 2–3.[2]

Ms. Rodriguez filed the present motion for compassionate release on September 16, 2026, relying on an affidavit, letters from relatives and acquaintances, BOP records, and sealed medical records about her father. Docs. 472, 473.[3] Additional facts about her family circumstances and the offense conduct will be discussed *infra*.

---

[1] The Court held an initial sentencing hearing February 1, 2023, which was continued to allow the probation office to file a supplemental PSR. All references to the PSR in this order are to the revised final PSR filed February 6, 2023, and adopted in full at sentencing. Doc. 352; *see* Minute Entry 02/21/2023; *see also* Doc. 360 (Statement of Reasons reflecting adoption of PSR without change).

[2] Ms. Rodriguez also filed a motion for sentence reduction under Amendment 821 in February 2024, which the Court denied in February 2025 because Ms. Rodriguez "was assessed points for aggravating role," precluding a reduction as a "zero-point offender." Doc. 458.

[3] The Magistrate Judge construed the motion as one for compassionate release and terminated the motion as one for relief under 28 U.S.C. § 2255. The Magistrate Judge also

## II. Facts[4]

The indictment filed February 2022 charged Ms. Rodriguez, along with 13 co-defendants, with conspiracy to distribute drugs. Doc. 1. As to Ms. Rodriguez, the indictment charged her with object two of the conspiracy, possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. *Id.* at 2–3. Ms. Rodriguez pled guilty to a "lesser-included offense of object two of the Indictment," involving a quantity of a mixture and substance containing a detectable amount of methamphetamine. Doc. 198 at pp. 1–2 ¶¶ 1–2.

As determined at sentencing, the offense conduct involved her distribution of methamphetamine (actual) and cocaine, in 2020 and 2021. Doc. 352 at p. 16 ¶ 38, pp. 7–12 ¶¶ 6–18, 21, 33. Her offense level 35 was based upon a converted drug weight of 86,801.33 kg, and a two-level adjustment for her role in the offense as an organizer, leader, manager, or supervisor. *Id.* at pp. 16–17 ¶¶ 38, 41, 47. She had no criminal history and no other criminal conduct, pending charges, or arrests. *Id.* at pp. 17–18 ¶¶ 49–54.

Ms. Rodriguez is now 46 years old. *Id.* at 3. She has served approximately 49 months in custody, and her projected release date is November 16, 2030. *See id.* at 1 (noting seven days custody upon arrest in February 2022, and federal custody since July

---

denied a motion by Ms. Rodriguez to appoint counsel and the Court denied an earlier-filed motion because it lacked a signature. *See* Docs. 467, 474 and 03/16/2026 Text Order.

[4] The Court has not required a response to the pending motion from the government. The Court's recitation of facts is set forth for purposes of this Order only, based on the record and on the defendant's submissions.

11, 2022); BOP Inmate Locator, (www.bop.gov/ inmateloc/); *see also* Doc. 472 at 29 (projected release date).

Mr. Rodriguez has no noted disciplinary history or behavioral issues while incarcerated. *E.g.*, Doc. 472 at 25. She has completed many educational offerings, worked in prison food service, and has paid her special assessment. *Id.* at 25–26; *see* Doc. 359 at 6. Two letters from fellow inmates attest to her good rapport with staff. *Id.* at 39, 41.

Before her incarceration, Ms. Rodriguez lived with her children in Greensboro, North Carolina. Doc. 352 at p. 20 ¶ 62.[5] She opened a hair styling salon in Greensboro in December 2018, where she had her own space and clientele and rented other spaces to other beauticians. *Id.* at p. 21 ¶ 68. At the time of sentencing, her daughter, Jorgelis Baez, was managing the hair studio. *Id.*

Ms. Rodriguez's father, Mart Augusto Prensa, is 72 years old; in May 2026, he was discharged from a hospital in Worcester, Massachusetts to a "rehab facility for hospice care" due to multiple health problems. Doc. 473 at 12. So far as the record shows, Mr. Prensa remains at that facility. *See id.* at 12, 14; Doc. 472 at 15, 23–24. Records reflect that Mr. Prensa had suffered from "multiple prior strokes" and "new strokes," and he was diagnosed with dysphagia and aphasia. Doc. 473 at 11. He was

[5] Ms. Rodriguez "reported four previous marriages," as follows: 1) Jose Ernesto Baez, who lives in Dominican Republic, resulting in two children and divorce in 2010, 2) Eddie Antonio Heredia, who lives in Worcester, Massachusetts, resulting in one child and divorce in 2014, 3) Mauricio Rodriguez, in Dominican Republic, resulting in divorce in 2017, and 4) Marvin Diaz, who resides in Guatemala and who she is trying to divorce. Doc. 352 at p. 19, ¶ 60.

"transition[ed] to comfort measures only." *Id.* Previously, he needed "1-2 person assist with mobility," and he had a "poor prognosis" with "unlikelihood that he will recover back to his baseline or to be able to eat/drink safely." *Id.*

Mr. Prensa's medical history upon hospital admission was obtained primarily from "his granddaughter at bedside," who noted he had returned with her from the Dominican Republic, where he had received prior medical treatment. *Id.* at 10.[6] Mr. Prensa "was able to fill out a healthcare proxy listing his daughter and granddaughter as healthcare agents." *Id.* at 11. The records list Nashla Prensa "Next of Kin – Grandchild," and Yury Prensa "Next of Kin – Daughter" as "Health Care Agents" for Mr. Prensa. *Id.* at 2.

Mr. Prensa's granddaughter, Nashla Prensa, lives in Worcester, Massachusetts. Doc. 472 at 24.[7] She states she is "unable to assume the role of my grandfather's primary caregiver while he is receiving hospice care." *Id.* She currently works full-time while attending school full-time, and this makes it impossible to provide continuous care to Mr. Prensa. *Id.*

Yury Prensa, who is Mr. Prensa's daughter and Ms. Rodriguez's sister, lives in Lawrence, Massachusetts. *Id.* at 23; *see* Doc. 352 at p. 18 ¶ 56. She states that she is not able to assist with the daily needs of her father, Mr. Prensa. Doc. 472 at 23. She writes that her "situation is very different" from Ms. Rodriguez, and she maintains "full-time

---

[6] At the time of the PSR in 2023, Mr. Prensa resided in the Dominican Republic and had already suffered a stroke. Doc. 352 p. 18 ¶ 55.

[7] The hospital record lists an address for Mr. Prensa at "8 Berton Rd" in Worcester. Doc. 473 at 2. Nashla Prensa specifies her own address as "8 Merton Rd" in Worcester. Doc. 472 at 24. These are presumably the same address, with a typo in one or the other.

employment and, outside of work, [her] priority is caring for [her] child and managing [her] household." *Id.* She also describes Ms. Rodriguez's prior work and prior care of Ms. Rodriguez's children. *Id.* at 37.

Ms. Rodriguez's brother, Sergio Prensa, resides in Lawrence, Massachusetts. Doc. 352 at p. 18 ¶ 56. He describes Ms. Rodriguez prior work at "the salon," as well as her prior move "from Massachusetts to North Carolina." Doc. 472 at 36. Ms. Rodriguez has "a good and close relationship with her siblings." Doc. 352 at p. 18 ¶ 56.

Ms. Rodriguez's mother, Asuncion Ortiz, and Mr. Prensa separated when Ms. Rodriguez was four years old. *Id.* at p. 18 ¶ 57. Ms. Ortiz resides in Worcester, Massachusetts. *See id.* at ¶ 55. Ms. Ortiz notes that Ms. Rodriguez herself "is a loving mother who has worked hard, who has a good heart, and who still has so much to give to her children and family." Doc. 472 at 33.

Jorgelis Baez is Ms. Rodriguez's 21-year-old daughter, residing in Massachusetts. *Id.* at 34, 43.[8] She notes Ms. Rodriguez "worked for years doing hair and turned it into more than just a job." *Id.* at 34. She states Ms. Rodriguez "built a strong and loyal clientele," and Jorgelis Baez tried to manage the business after Ms. Rodriguez was incarcerated. *Id.* Nestor Baez is a 19 or 20 year-old son of Ms. Rodriguez, and he describes the care Ms. Rodriguez provided to him and his siblings. *Id.* at 35.

[8] There are two letters from Ms. Baez in the record. One letter is undated and suggests she lives in North Carolina and was 19 at the time of sentencing. Doc. 472 at 34. Another letter bears a Massachusetts address, is dated November 2025, and references younger brothers aged 19 and 14. *Id.* at 43. As the PSR states she is 18 (in February 2023), it is reasonable to infer she is at least 21 now. Doc. 352 at p.19 ¶ 61.

Ms. Rodriguez states that she is “needed vitally at home as the only care giver to [her] father.” *Id.* at 17. In her motion, she asserts “there is no one other than the plaintiff that is available to be a full time care giver” to her father, and he is in an “emergency situation” on the “end span of his life.” *Id.* at 14–15.

## III. Discussion

### A. Standard for Compassionate Release

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (“The law closely guards the finality of criminal sentences against judicial change of heart.” (cleaned up)). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c); *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Section 3582(c)(1)(A), often called the “compassionate release” provision, is one such statutory provision. *See Jenkins*, 22 F.4th at 169.

In 2018, the First Step Act amended § 3582(c)(1)(A) to allow defendant-inmates to move for compassionate release directly. *Id.* Courts analyze compassionate release motions by first assessing whether extraordinary and compelling reasons exist and whether a sentence reduction is consistent with the applicable policy statement issued by the Sentencing Commission. *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *see also United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025). If so, courts then consider whether the relevant § 3553(a) sentencing factors support early release. *Crawley*, 140 F.4th at 169.

**B. Extraordinary and Compelling Circumstances**

In the policy statement, the Sentencing Commission defines the limited and specific circumstances that individually or in combination constitute extraordinary and compelling circumstances. *See generally* U.S.S.G. § 1B1.13(b). There are six categories of circumstances identified in the policy statement. *See id.*[9] The only categories that arguably might apply here, and the only categories cited by Ms. Rodriguez, are "medical circumstances" and "family circumstances." U.S.S.G. §§ 1B1.13(b)(1)(C), (b)(3)(C); *see* Doc. 472 at 1. Ms. Rodriguez also suggests her other grounds for relief qualify as "other reasons" that "are similar in gravity to" the first four categories identified in the guidelines. U.S.S.G. § 1B1.13(b)(5); *see* Doc. 472 at 2, 7–13, 18–20. The Court addresses the grounds raised in turn as follows.

**1. Medical Circumstances**

To qualify as an extraordinary and compelling reason under § 1B1.13(b)(1)(C), Ms. Rodriguez must be "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." The Court previously determined that the medical records in the file about Ms. Rodriguez's conditions and treatment do not "rise to the level of an extraordinary and compelling circumstance under § 1B1.13(b)(1)." Doc.

[9] One of the six categories identified in the policy statement, "unusually long sentence" coupled with "a change in the law," § 1B1.13(b)(6), is no longer a valid category for compassionate release, as the Supreme Court has held this category "exceeds the Commission's authority." *Fernandez v. United States*, 608 U.S. 411, 146 S. Ct. 1292, 1304 n.5 (2026) (citing *Rutherford v. United States*, 608 U.S. 454, 146 S. Ct. 1320, 1330 (2026)).

462 at 3; *see* Docs. 449–450. Ms. Rodriguez has not filed any additional medical records about her own conditions or treatment. *See generally* Docs. 472–473. Her additional contentions in her motion are general and not supported by evidence, and they do not change this determination. *See, e.g.*, Doc. 472 at 1–2. She has not shown extraordinary and compelling circumstances based on her medical circumstances.

**2. Family Circumstances**

The policy statement identifies an extraordinary and compelling circumstance in the event of the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).

Here, hospital records show that Ms. Rodriguez's father, Mr. Prensa, is incapacitated. *See, e.g.*, Doc. 473 at 11–12, 14. But Ms. Rodriguez's assertion that she is the sole available caregiver is not supported by the evidence and is otherwise insufficient to support a sentence reduction for two reasons.

First, Ms. Rodriguez lived and worked in Greensboro, North Carolina, before her incarceration. Ms. Rodriguez has not specified a release plan by which she can assist Mr. Prensa, who was discharged to a "rehab facility for hospice care" in Massachusetts. *Id.* at 12. She avers she is willing to be subject to "home confinement," Doc. 472 at 21, but she does not specify in whose home she will be confined, explain why that home is appropriate, and even whether she would live in the same home as Mr. Prensa.

Second, because Mr. Prensa has been in hospice care in a rehab facility since May 2026, he has necessarily been under the care of others since that time. *See* Doc. 473 at 11. There is no doubt he would benefit from having Ms. Rodriguez present, and other

family members would value her presence. *E.g.*, Doc. 472 at 14–15, 23, 24. But, this is not the test for relief. *See, e.g., United States v. Dewalt*, No. 1:20-CR-78, 2025 WL 3213875, at *3 (M.D.N.C. Nov. 18, 2025). Ms. Rodriguez has not shown that other family members, such as her siblings, her daughter, or Mr. Prensa's granddaughter, who are already in Massachusetts, cannot each help from time to time, despite their assertion of their own work and family responsibilities. Doc. 473 at 2, 11; Doc. 472 at 34, 43.

In sum, Ms. Rodriguez has not shown her family circumstances are extraordinary and compelling.

**3. Retroactive Amendment**

Ms. Rodriguez contends Retroactive Amendment 821 to the Guidelines applies to reduce her term of imprisonment. She seeks a reduction under the "safety valve" for zero point offenders, as well as amendments to "minor participant" guidelines. Doc. 472 at 5–6, 11–13 (citing, e.g., U.S.S.G. §§ 5C1.2, 3B1.2). But the Court already denied Ms. Rodriguez's motion under Amendment 821, concluding she did not qualify for a reduction because Ms. Rodriguez "was assessed points for aggravating role." Doc. 458. In addition, changes to the Guidelines are not extraordinary and compelling circumstances for compassionate release. *Fernandez v. United States*, 608 U.S. 411, 146 S. Ct. 1292, 1304 n.5 (2026). Her motion in this part is unavailing.

**4. Sentencing Disparity**

Ms. Rodriguez contends compassionate release is warranted because she was sentenced "three times higher than her co-defendants while she was less involved in the criminal activities." Doc. 472 at 7. But the premises of this contention are inaccurate.

While she points to five codefendants who received sentences shorter than 84 months, she does not mention five other co-defendants and co-conspirators who received sentences greater than 132 months. *See* Doc. 352 at 5–7; No. 1:22-CR-25-1, -11; 1:21-CR-413-1; 1:22-CR-177-2, -3. In addition, the five co-defendants she cites either were not accountable for as many drugs as she was or they did not receive an enhancement for an aggravating role. *Compare* Doc. 352 at 16–17 *with* No. 1:22-CR-25 Doc. 350 at 16 (Quezada); Doc. 255 at 14 (Ashe); Doc. 284 at 27 (Rogers); Doc. 235 at 14 (Figueroa); Doc. 239 at 13 (Jackson).

Ms. Rodriguez suggests the Court erred in applying an aggravating role enhancement and should have instead applied a minor role reduction. *See* Doc. 472 at 3. But an alleged error in earlier decisions is not a basis for compassionate release. *United States v. Ferguson*, 55 F.4th 262, 270–71 (4th Cir. 2022). In any event, the Court adopted the PSR in its entirety and the facts in the PSR support an aggravating role enhancement based on Ms. Rodriguez's direction of co-defendant Santos-Quezada. Doc. 352 at p. 11 ¶ 16, p. 13 ¶¶ 21, 26.

Ms. Rodriguez has not shown an unwarranted sentence disparity, much less a disparity that is an extraordinary and compelling circumstance.

**5. Methamphetamine Ratio**

Ms. Rodriguez contends that her guidelines range was "improperly higher due to the ratio of 10-1 for purity" of actual methamphetamine, rather than using the converted drug weight for a methamphetamine mixture. Doc. 472 at 2–4. She cites court decisions suggesting there is no empirical data supporting the distinction. *Id.* at 3–4.

Ms. Rodriguez in effect seeks reconsideration of the Court's application of the Guidelines at sentencing. Section 3582(c)(1)(A) does not require a court to engage in a new determination that the original sentence was appropriate. Indeed, use of the statute for that purpose would undermine the laudable goals of finality. *See United States v. Hancock*, No. 1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021). The Court took into account "the severity of the meth purity guideline" in making its original sentencing decision, Doc. 360 at 3, and no persuasive reason for reconsidering the Court's initial weighing of the sentencing factors has been offered.

The methamphetamine ratio does not constitute an extraordinary and compelling circumstance.

**6. Rehabilitation**

Ms. Rodriguez recognizes that courts cannot grant compassionate release based solely on rehabilitation. *See* Doc. 472 at 8; U.S.S.G. § 1B1.13(d). She asks the Court to consider her rehabilitation in combination with all other circumstances in determining whether to grant compassionate release. Doc. 472 at 8. She cites her employment, many educational courses, lack of infractions, minimum risk of recidivism, and maintaining a positive attitude despite difficult prison and family conditions. *Id.* at 9–10, 16–17.

Here, there are no other circumstances constituting extraordinary and compelling reasons for a sentence reduction, so Ms. Rodriguez's rehabilitation is not sufficient to tip the scale in combination with other circumstances. The Court considers Ms. Rodriguez's rehabilitation also in weighing § 3553 factors in the alternative, *infra*.

### 7. First Step Act and Second Chance Act

Ms. Rodriguez contends that the Court should order the BOP to apply the First Step Act and Second Chance Act to transfer her to home confinement. *Id.* at 18–20. The present compassionate release motion is not the proper vehicle to challenge BOP's calculation and application of time credits or placement decisions. Indeed, the cases Ms. Rodriguez cites are addressing either motions under 28 U.S.C. § 2241 or 42 U.S.C. § 1983. *E.g., Scott v. Fed. Bureau of Prisons*, 317 F. Supp. 2d 529, 533 (D.N.J. 2004) (§ 1983); *Woodley v. Warden, USP Leavenworth*, No. 24-3053-JWL, 2024 WL 2260904, at *1 (D. Kan. May 15, 2024) (§ 2241). If Ms. Rodriguez seeks to further develop such a claim, upon exhausting administrative remedies as appropriate, she may file it under 28 U.S.C. § 2241 in the district of her confinement. *See United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004).

### 8. Conclusion as to Extraordinary and Compelling Circumstances

The compassionate release statute requires that sentence reductions be granted only when "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, Ms. Rodriguez has not met her burden to show that any of the reasons set forth by the Sentencing Commission as extraordinary and compelling apply. Even when considered together, her arguments do not demonstrate extraordinary and compelling circumstances warranting a sentence reduction. The Court presided over the defendant's sentencing in this matter, imposed a sentence well below the minimum suggested by the Guidelines, and finds no good reason under the statute or

the Policy Statement to reduce her sentence further. *See United States v. Washington*, 161 F.4th 816, 820 (4th Cir. 2025).

**C. § 3553(a) Factors**

In addition, and in the alternative, considering all of Ms. Rodriguez's circumstances together, along with the § 3553(a) factors, a reduction in sentence is not warranted. Ms. Rodriguez is a first-time offender, with mitigating family and employment circumstances, but the Court took that into account in varying below the guideline range when imposing sentence. Her crime involved a significant amount of dangerous drugs, Ms. Rodriguez was involved in many transactions over time, and she directed the activities of another co-conspirator. *See, e.g.*, Doc. 352 at pp. 7–15 ¶¶ 6–18, 21, 26, 33, 36. A sentence reduction in these circumstances is not warranted.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 472, is **DENIED**.

This the 22nd day of October, 2026.

UNITED STATES DISTRICT JUDGE